IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GLENN RIPPLEY,                )
                              )
            Plaintiff,        )
                              )
vs.                           )   Case No. 10-cv-0988-MJR-PMF
                              )
TEAMSTERS LOCAL 525,          )
                              )
            Defendant.        )

## MEMORANDUM AND ORDER

REAGAN, District Judge:

### A.    Introduction and Procedural Overview

In December 2010, Glenn Rippley filed suit in this District Court against two unions – Teamsters Local Union No. 50 and Teamsters Local Union No. 525. Proceeding pro se, Rippley used a form employment discrimination complaint on which he checked boxes indicating that he alleged (1) race discrimination under Title VII of the Civil Rights Act of 1967 as amended, 42 U.S.C. § 2000e, *et seq*. (Title VII) "and/or" race discrimination under 42 U.S.C. § 1981, (2) religious discrimination under Title VII, and (3) retaliation. Attached to Rippley's complaint was a confusing tangle of exhibits, including charges Rippley filed in October and November 2010 with the National Labor Relations Board (NLRB), intake questionnaires he filed with the U.S. Equal Employment Opportunity Commission (EEOC), and right-to-sue notices issued by the EEOC, which are dated September 14, 2010 and November 17, 2010.

Reviewing the complaint while ruling on Rippley's motion for pauper status in January 2011, the undersigned Judge explained (Doc. 4, p. 4):

> 42 U.S.C. 2000e-2(c) declares it an "unlawful employment practice" for a labor organization: (1) to exclude … or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin; [or] (2) to … fail or refuse to refer for employment any individual, in any way which would … tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin….
>
> Generously construed, Rippley alleges that Defendants acted to limit or deny him employment opportunities based on his race or in retaliation for his prior filing of charges with the EEOC and the National Labor Relations Board

The Court granted Rippley pauper status. Both Defendants were served, and they separately responded to Rippley's complaint in March 2011.

Local 525 answered the complaint and counterclaimed against Rippley. Local 50 moved for judgment on the pleadings on Rippley's discrimination claims (under both Title VII and Section 1981) and summary judgment on Rippley's retaliation claim. On May 18, 2011, the Court granted both of Local 50's motions, concluding (Doc. 23, p. 18):

> In the wake of this Order, what remains are Rippley's claims against Local 525 for race discrimination (based on Title VII and Section 1981), religious discrimination (based on Title VII), and retaliation (based on Title VII).[1]

---

[1] The Order also noted that Local 525 had counterclaimed against Rippley for abuse of process (Doc. 23, pp. 18-19).

Now before the Court is Local 525's motion for summary judgment as to all of Rippley's claims against it, including race discrimination, religious discrimination, and retaliation (plus a potential claim for breach of the duty of fair representation). Local 525's motion became ripe for ruling January 30, 2012, following the filing of supporting, opposing, and reply briefs (see Docs. 41, 42, 45, 46). Analysis begins with recitation of the governing legal standards.

### B. Applicable Legal Standards

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(a).**

Rule 56(c) delineates the procedures for supporting or opposing a summary judgment motion. Rule 56(c)(1) provides that in asserting that a fact cannot be genuinely disputed, a party must point to support in depositions, affidavits, declarations, admissions, or other materials in the record (*or* show that the adverse party "cannot produce admissible evidence to support the fact"). Once this has been done by the movant, the nonmovant may not remain silent. "When a summary judgment motion is submitted and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings, but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7th Cir. 2011),** *quoting Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 250 (1986).**

The moving party's burden is discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Marcatante v. City of Chicago*, **657 F.3d 433, 439 (7th Cir. 2011).** And the "district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact." *Luster v. Illinois Dept. of Corrections*, **652 F.3d 726, 730 (7th Cir. 2011).**

In assessing a summary judgment motion, the district court must construe all facts in the light most favorable to, and draw all legitimate inferences in favor of, the nonmovant. *Righi v. SMC Corp.*, **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011);** *Spivey v. Adaptive Marketing, LLC,* **622 F.3d 816, 822 (7th Cir. 2010);** *Reget v. City of La Crosse*, **595 F.3d 691, 695 (7th Cir. 2010).** But once the movant challenges "the factual support and legal soundness of plaintiffs' claim, the plaintiffs [acquire] the burden of demonstrating that genuine issues [remain] for trial." *Marcatante,* **657 F.3d at 440,** *citing Boumehdi v. Plastag Holdings, LLC,* **489 F.3d 781, 787 (7th Cir. 2007)(To survive summary judgment, the plaintiffs must make a sufficient showing of evidence for each element they bear the burden of proving at trial).** *See also Reget***, 595 F.3d at 695.**

A genuine issue of material fact remains only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj,* **656 F.3d at 547,** *citing Anderson,* **477 U.S. at 248.** In other words, to survive summary judgment, the plaintiff must produce *admissible evidence* on which a jury could find in his favor. *Maclin v. SBC Ameritech*, **520 F.3d 781, 786 (7th Cir. 2008).** In the case at bar, Local 525

has discharged its burden as summary judgment movant, and Plaintiff has not sustained his burden of producing admissible evidence on which a reasonable jury could find in his favor.

    C.    **<u>Summary of Key Undisputed Facts</u>**

Local 525 of the International Brotherhood of Teamsters (Local 525) is a labor organization in an industry affecting commerce, within the meaning of Title VII. Local 525 is a member of the Illinois Conference of Teamsters, which is a party to a collective bargaining agreement (CBA) with the Associated General Contractors of Illinois. The CBA was provided to the Court as an attachment to the January 17, 2012 Affidavit of Tim Ryan, the Assistant Business Agent for Teamsters Local 525 (Doc. 42-1).

Local 525 represents employees in the construction industry in the Illinois counties of Calhoun, Green, Jersey, Macoupin, Madison, and Montgomery. *Local 50* represents employees in the same industry in other Illinois counties -- St. Clair, Bond, Clinton, Fayette, Clay, Wayne, Marion, Jefferson, Washington, Randolph, and Monroe. In accord with the terms of the CBA between the Illinois Conference of Teamsters and the Associated General Contractors of Illinois, Local 525 operates a non-exclusive referral system under which employers can obtain qualified individuals to hire as truck drivers.

Article 4 of the CBA, captioned "Procurement of Labor," provides that the Employer and Union agree that the Union (Local 525) "will maintain a list of persons available for employment," pursuant to the "rules and regulations for the maintenance of the list … set forth below" (Doc. 42-1, p. 9).

The Union is obligated, *inter alia*, to ensure that any person referred for employment has the proper license to perform the work in question; the referral office is to refer only persons with the skills and experience required for the particular job; and the employer reserves the right to accept or reject the persons referred by the referral office (*id.,* pp. 10-11). Article 4(j) provides that neither the employer nor the Union shall engage in or encourage employment practices which discriminate against applicants on the basis of race, age, sex, or other characteristics protected by law (*id.*, p. 11).

The CBA includes a section entitled "Rules and Regulations of Referral Office." Particularly relevant to the case at bar, these provide that an applicant "may place his name upon the registration list *providing he is unemployed,*" and applicants are to be added to the list "serially by the date and time of their application" (Doc. 42-1, p. 13; emphasis added). The applicant is obligated to notify the Union where and when he is working. Once the applicant takes a job and works five days with one employer, "the Union shall strike their name from [the] list and it shall remain off the list until said applicant re-registers" (*id.*). The referral system outlined in the CBA also includes a provision to resolve complaints by applicants who are aggrieved by any action of Local 525 involving an application or referral for work (Article 4(n) of CBA; Doc. 42-1, p. 12).

Glenn Rippley, an African-American, has been a member of the Teamsters Local 525 for over ten years. During that time, Local 525 has referred Rippley to various employers requesting drivers.

In July 2010, Rippley applied for job referral using both the Local 50 referral system and the Local 525 referral system. Each Local interpreted this as a representation by Rippley that he was unemployed. On or about July 2, 2010, Local 525 referred Rippley to an employer for a job as a driver. After Rippley had worked five days with that employer, Local 525 removed Rippley's name from the referral list, as required by the rules contained in the CBA. Local 525's Business Agent (Tim Ryan) also notified Local 50 that Rippley had been placed through the Local 525 hiring hall.[2]

Rippley filed this federal lawsuit in December 2010 alleging race discrimination, religious discrimination, and retaliation -- asserting that Local 525 denied him employment opportunities by violating the CBA, conspiring with union members to deprive him of job referrals, concealing information from him, and (in one October 2010 incident involving a "Teamster 525 associate known as Russ," Complaint, Doc. 1., p. 3), threatening him. (Local 525 has no officer or agent named "Russ;" he was a coworker of Rippley's on the job in question.) Rippley never filed any grievance under Section 4(n) of the CBA alleging that he was aggrieved by Local 525's handling of a job referral or application.

He did file a grievance *with his employer* regarding the on-the-job threat by Russ. The employer investigated the incident and found it lacked merit. Local 525 did not participate in the employer's investigation but later performed its own investigation. Tim Ryan interviewed witnesses (including Rippley), met with the

---

[2] Local 525 maintains that Rippley himself did not notify Local 50 that he was referred by Local 525 (i.e., that he was "employed"), as required by the CBA referral rules.

employer, reviewed the relevant terms of the CBA, and concluded that the employer had not violated the CBA.

As referenced above, following the Court's prior Orders herein, what remains for disposition are Rippley's claims against Local 525 for race discrimination (based on Title VII and Section 1981), religious discrimination (based on Title VII), and retaliation (based on Title VII).  Local 525 seeks summary judgment on all these claims, arguing that Plaintiff Rippley has not and cannot show race discrimination, religious discrimination or retaliation via the direct or indirect methods of proof.  Furthermore, assuming that Rippley's complaint could be construed to include a claim against Local 525 for breaching its duty to fairly represent Rippley, Local 525 argues that Rippley has produced no evidence indicating that Local 525's actions were arbitrary, discriminatory or undertaken in bad faith, so that claim fails too.

D.     **Analysis**

Title VII declares it an unlawful employment practice for a labor organization to discriminate against any individual *because of* his race or religion, to classify or refuse to refer for employment any individual in a way that would deprive him of employment opportunities *because of* his race or religion, or to "cause or attempt to cause an employer to discriminate against an individual in violation of this section." **42 U.S.C. § 2000e-2(c).**  Title VII also prohibits employers from discriminating against employees "for opposing a practice made unlawful by the Act." **42 U.S.C. § 2000e-3(a).**

42 U.S.C. § 1981 secures to all persons in the United States the same right "to make and enforce contracts" and "the full and equal benefit of all laws" enjoyed by

white citizens. For purposes of § 1981, the term "make and enforce contracts" encompasses the enjoyment of all benefits and privileges of contractual relationships. The United States Supreme Court has interpreted § 1981 as furnishing broadly sweeping protection against (and a federal remedy for) race discrimination in the making and enforcing of contracts. *Humphries v. CBOCS West, Inc.*, **474 F.3d 387, 393 (7th Cir. 2007).** *See also Sullivan v. Little Hunting Park, Inc.*, **396 U.S. 229, 235-37 (1969).**

To prove discrimination or retaliation under either Title VII or § 1981, the plaintiff must present direct or circumstantial evidence that the defendant acted for a prohibited reason. *See Harris v. Warrick County Sheriff's Dept.*, **666 F.3d 444, 447-48 (7th Cir. 2012);** *Egonmwan v. Cook County Sheriff's Dept.*, **602 F.3d 845, 849-50 n.7 (7th Cir. 2010);** *Keeton v. Morningstar, Inc.*, **667 F.3d 877 (7th Cir. 2012).** This Court analyzes Rippley's Title VII and § 1981 claims together, as they require a plaintiff to prove the same prima facie elements. *See Hobbs v. City of Chicago*, **573 F.3d 454, 460 n.1 (7th Cir. 2009),** *citing Antonetti v. Abbott Labs.*, **563 F.3d 587, 591 n. 4 (7th Cir. 2009).** *Accord Swearnigen-El v. Cook County Sheriff's Dept.*, **602 F.3d 852, 860 n.6 (7th Cir. 2010)("The same requirements for proving discrimination apply to claims under Title VII, § 1981, and § 1983.").**

→ **Discrimination based on Rippley's Race or Religion**

Two months ago, the United States Court of Appeals for the Seventh Circuit reiterated that a plaintiff may prove discrimination either directly or indirectly. In *Coleman v. Donahoe,* **667 F.3d 835, 845 (7th Cir. 2012),** the Court summarized:

> Under the "direct method," the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action. Of course, "smoking gun" evidence of discriminatory intent is hard to come by….
>
> So in a line of cases beginning with *McDonnell Douglas [Corp. v. Green,* 411 U.S. 792 (1973)], the Supreme Court developed a burden-shifting framework known as the "indirect method" of proof, designed to "sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255, n. 8…. (1981).

In the case at bar, Glenn Rippley has offered no direct evidence of discrimination based either on his race (African-American) or his religion (which is not disclosed in his complaint or pleadings, as noted in the Court's May 2011 Order herein). So the Court turns to the indirect method of proving discrimination.[3]

Under the indirect method, first the plaintiff must establish a prima facie case of discrimination by offering evidence that (1) he is a member of a protected class, (2) his job performance was satisfactory, (3) he suffered an adverse employment action,

---

[3] Because we are at the summary judgment stage, the nonmovant (here, Plaintiff Rippley) must *present evidence* that could convince a jury (the trier of fact) that Local 525 discriminated against him because of his race or religion (or retaliated against him because of his protected activity). Plaintiff cannot defeat summary judgment by insisting that his complaint is "plausible on its face" or hinting that he has evidence he will produce if requested at some later date (Reply Brief, pp. 3-4). The Court clearly advised Plaintiff of this in its May 2011 Order (Doc. 23, p. 17): "in the context of the summary judgment motion, we look beyond what Plaintiff has alleged and ask what Plaintiff has *established*."

and (4) another similarly situated individual who is *not* in the protected class was treated more favorably than plaintiff was treated. ***Coleman*, 667 F.3d at 845,** *citing Burks v. Wisconsin Department of Transportation*, **464 F.3d 744, 750-51 (7th Cir. 2006).** *See also Rodgers v. White*, **657 F.3d 511, 517 (7th Cir. 2011).**

Once the plaintiff has made out a prima facie case of discrimination, a presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. If the defendant does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a "pretext" for unlawful discrimination. ***Coleman*, 667 F.3d at 845.** Although the burden of production shifts via the presumptions employed in the *McDonnell Douglas* framework, the ultimate burden of persuasion remains on the plaintiff at all times. S*t. Mary's Honor Center v. Hicks*, **509 U.S. 502, 507 (1993).**

In the instant case, the record establishes that Rippley, an African-American, is a member of a protected class (satisfying prong 1 of the prima facie case). The briefs do not directly address whether his job performance met expectations, but the Court assumes for purposes of this motion that Rippley's job performance was satisfactory (meeting prong 2 of the prima facie case). Rippley has identified one materially adverse employment action he suffered at the hands of Local 525 -- the removal of his name from the job referral list (meeting prong 3 of the prima facie case).[4]

---

[4] Rippley also complains that Local 525 told Local 50 when Rippley got hired for the July 2010 driving job. The Court is hard-pressed to conclude that this communication from one Local to another constitutes a materially adverse

Rippley's proof fails on prong 4 of the prima facie case. He has not identified a single other similarly situated individual not in the protected class who was treated better than he. The Seventh Circuit has stressed that the similarly-situated individual analysis should involve a common-sense, flexible examination of relevant factors, and the Court need only look for comparators, not clones. ***Coleman*, 667 F.3d at 846,** *citing Patterson v. Indiana Newspapers, Inc.,* **589 F.3d 357, 365-66 (7th Cir. 2009), and** *Chaney v. Plainfield Healthcare Center,* **612 F.3d 908, 916 (7th Cir. 2010).** Here, however, the record is wholly devoid of evidence of similarly situated individuals who were treated more favorably than Rippley.

Rippley has not named (and the records before the Court do not contain evidence of) a single person who was treated *differently or better* by Local 525 in terms of how they were placed on and referred for employment off of the list. To the contrary, the materials before the Court show that Local 525's Business Agent followed the same practice and procedures whenever applicants (Rippley or others) secured employment from Local 525's referral list.

Moreover, in the materials filed with his complaint (specifically, his EEOC charge documents), Rippley expressly stated that there is *no* similarly situated non-minority who was treated more favorably than he was treated by the union. *See, e.g.,* Doc. 1-1, p. 5 (When asked: "Of the persons in the same or similar situation as you, who was treated *better* than you?," Plaintiff responded "None.") Rippley proceeds pro se

---

employment action, especially when the record reveals that this notification is standard operating procedure between the two Teamster Locals (see Ryan Affidavit, Doc. 42-1, p. 4).

and could have been confused as to the meaning of his answers on the EEOC forms, but the significance of the statement was flagged for him in clear and simple terms in the pleadings in this Court.

Indeed, this precise point was raised in prior motions herein, and the Court plainly explained what this prong of the prima facie case means and stressed Rippley's need to produce this evidence of similarly situated individuals in its detailed May 2011 Order ruling on Local 50's motions. Rippley's subsequent briefs and materials (on Local 525's motions) present no evidence to satisfy this requirement.

So, although the plaintiff's burden on prong four of the prima facie case is "not onerous," *Burdine*, **450 U.S. at 253,** Glenn Rippley has not met his burden on this component of his prima facie case of discrimination. *See also Coleman*, **667 F.3d at 846-47 (summary judgment for defendant appropriate where "no reasonable fact-finder could find that plaintiffs have met their burden" to identify comparable employee outside of protected class who was treated more favorably).**

Even assuming, *arguendo*, that Rippley *had* made his prima face case, his discrimination claims fail to survive summary judgment, because Local 525 has demonstrated a legitimate nondiscriminatory reason for removing Rippley's name from the referral list once he secured a job for the requisite number of days with an employer – Local 525 was complying with the requirements of the CBA and following standard procedures/practices for the hiring hall. There is not a shred of evidence that Local 525 removed Rippley's name from the list after he landed a job or notified Local 50 that Rippley had been hired out of the hall *because of his race or religion.*

And Rippley has offered nothing to suggest that Local 525's following of standard protocols or compliance with CBA obligations was a pretext for discrimination. *See, e.g., Jones v. Union Pacific R. Co.*, 302 F.3d 735, 742-43 (7th Cir. 2002)(**To show pretext for discrimination, the plaintiff "must produce 'significantly probative admissible evidence' from which the trier of fact could infer that the employer's reason was false and that the actual reason was discriminatory"**).

No genuine issues of material fact remain, and Local 525 is entitled to judgment as a matter of law on Rippley's race- and religion-based discrimination claims under Title VII and Section 1981.

→ **Retaliation for "Whistle-Blowing"**

Rippley also alleges in his complaint that he was retaliated against by Local 525 based on his "previous whistle blowing" (Doc. 1, p. 2). He fleshes this allegation out with only one other sentence, under Section III "Statement of Claim" (*id.*, p. 3), noting that he previously lodged "eeoc charges and NLRB complaints on defendants."

Among the exhibits attached to the complaint were: (1) a November 2, 2010 NLRB Charge Rippley filed against Local 525 for "failing to communicate with" (return phone calls to) Rippley and failing to properly respond to the incident involving the October 2010 threat from a co-worker, presumably "Russ" (Doc. 1-3, p. 1), (2) a November 17, 2010 NLRB Charge Rippley filed against Local 525 for refusing to provide him "a copy of the referral list" (Doc. 1-4), and (3) materials relating to three EEOC charges (No. 560-2010-02737, No. 560-2010-02738, and No. 560-2011-00367)

against both Locals complaining of removal of his name from the job referral list and a threats of violence at the hands of "Teamster Russ" in October 2010.[5]

In addition to prohibiting discrimination, Title VII shields individuals from retaliation as a result of their protected activity. *See* **42 U.S.C. § 2000e-3(a).** "The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms ... by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Stephens v. Erickson,* **569 F.3d 779, 786 (7th Cir. 2009),** *quoting Burlington Northern & Santa Fe Ry. Co. v. White,* **548 U.S. 53, 68 (2006).**

Like discrimination, Title VII retaliation may be established by either the direct method or indirect method of proof. *Coleman***, 667 F.3d at 845.** To avoid summary judgment under the direct method for proving retaliation, a plaintiff must show: (1) that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action taken by the defendant; and (3) there was a causal connection or link between the two. *Hobbs***, 573 F.3d at 463;** *Silverman v. Board of Education of City of Chicago,* **637 F.3d 729, 740 (7th Cir. 2011).**

---

[5]  The chronology of allegedly retaliatory events is muddy. It is unclear whether Rippley contends that Local 525 mishandled the referral list and failed to communicate with him in retaliation for Rippley filing *earlier* NLRB and EEOC charges, or if Rippley contends that other retaliation occurred *after* he filed the charges attached to the complaint. The Court liberally construes the retaliation allegations, based on Rippley's pro se status.

Rippley satisfied the first element, since "[f]iling a charge with the EEOC about the alleged discrimination is the most obvious form of statutorily protected activity." *Silverman*, **637 F.3d at 740,** *citing* **42 U.S.C. § 2000e-3(a), and** *Chapin v. Fort-Rohr Motors, Inc.*, **621 F.3d 673, 677 (7th Cir. 2010).**

Rippley meets the second element when the Court construes all facts and reasonable inferences in his favor and assumes that the adverse action *by Local 525* (removal of Rippley's name from the referral list) happened <u>after</u> he filed one or more charges.[6] But the record contains no evidence of a causal connection between the two. So Rippley's retaliation claim fails under the direct method of proof.

He also falls short under the indirect method of proof. To establish a prima facie case of retaliation under the indirect approach, the plaintiff must demonstrate two of the same elements required by the direct approach – first, that he engaged in statutorily protected activity, and second, that he suffered an adverse employment action. *Silverman*, **637 F.3d at 742,** *citing Nichols v. Southern Illinois University-Edwardsville*, **510 F.3d 772, 785 (7th Cir. 2007).** Plus, the plaintiff must show that he was meeting his employer's legitimate expectations, and he was treated less favorably than similarly situated employees who did not engage in the protected

---

[6] The materials before the Court establish that Russ (who allegedly threatened Plaintiff) was a fellow union member and co-worker on a particular job site for a particular employer -- not an agent, officer, or representative of Local 525. Plaintiff has presented, and the Court can find, not a shred of evidence that Local 525 *conspired* with Russ to conceal the incident from the employer after-the-fact.

activity engaged in by the plaintiff. *Id., citing Leonard v. Eastern Illinois University*, **606 F.3d 428, 431 (7th Cir. 2010).**

As the Seventh Circuit summarized two months ago, under the indirect method, "to make out a claim for retaliation, [plaintiff] must demonstrate that she engaged in statutorily protected activity, performed her job to her employer's legitimate expectations, suffered an adverse employment action, and was treated less favorably than similarly situated employees who did not engage in that protected activity." *Keeton v. Morningstar, Inc.*, **667 F.3d 877 (7th Cir. 2012).**

Rippley's retaliation claim via the indirect method suffers from the same shortcomings as his discrimination claims under the indirect method. Assuming that the retaliation by Local 525 occurred *after* he filed his EEOC charge(s), Rippley has failed to offer sufficient (indeed, *any*) evidence that he was treated less favorably by Local 525 than a similarly situated individual who did not engage in the statutorily protected activity. Thus, his retaliation claim fails under the indirect method. There are no genuine issues of material fact remaining, and Local 525 is entitled to judgment as a matter of law on Rippley's retaliation claim.

→ **Breach of Duty of Fair Representation**

To the extent that Rippley's complaint can be read to allege a claim against Local 525 for breaching the duty of fairly representing him, that claim fails to survive summary judgment as well. Rippley's complaint, and his brief opposing summary judgment, complain that Local 525 failed to take proper action after Rippley reported the threats he received in October 2010 on the job from co-worker Russ, threats which

left Rippley deeply fearful. The undisputed record before this Court (including the Affidavit of Tim Ryan) establishes the following regarding this incident.

Rippley reported the incident to Ryan. Ryan advised Rippley to file a grievance with his employer, pursuant to the terms of the CBA. Rippley did so, and the employer investigated. Local 525 had no part in the employer's investigation and did not endeavor to conceal anything from the employer. Ultimately, the employer denied the grievance. Following that denial, Local 525 (through Ryan) conducted its own investigation into the incident and determined that the grievance had no merit. After concluding that the employer had not violated the CBA in any way and had taken appropriate action following the incident, Ryan decided to not take the grievance denial to arbitration, "because he did not believe he could prevail" (Doc. 42-1, p. 5).

Rippley's filing of NLRB or EEOC charges against Local 525 was not a factor in Ryan's decision declining to seek arbitration of Rippley's grievance. Rippley's race was not a factor in Ryan's declining to seek arbitration of Rippley's grievance. Ryan was not (and as of mid-January 2012 still is not) aware of Rippley's religious beliefs. Rippley's religion was not a factor in Ryan's decision declining to arbitrate Rippley's grievance.

A union's refusal to arbitrate a grievance constitutes a breach of the duty of fair representation if the union's decision was based on the fact the member filed charges against it. *Nemsky v. ConocoPhillips Co.*, **574 F.3d 859, 866 (7th Cir. 2009),** *citing* **29 U.S.C. § 411(a)(4).** Additionally, "A union breaches its duty of fair representation only where its actions in pursuing a member's grievance are 'arbitrary,

discriminatory, or in bad faith.'" *Truhlar v. U.S. Postal Service,* 600 F.3d 888, 892 (7th Cir. 2010).

To demonstrate that a union has acted arbitrarily, the plaintiff must show that at the time the union acted, its decision (for instance, to abandon a grievance) was "so far outside a wide range of reasonableness, as to be irrational," and "[t]hat's a high threshold." *Id., citing Air Line Pilots Association, Int'l v. O'Neill,* 499 U.S. 65, 67 (1991). To demonstrate that a union has acted in bad faith, the plaintiff "must point to subjective evidence showing that [the union's] decisions stemmed from an improper motive." *Truhlar,* 600 F.3d at 893.

It is true that a union has the duty to conduct "some minimal investigation into a member's grievance," but only an investigation that reflects "an egregious disregard for union members' rights constitutes a breach" of that duty. *Truhlar,* 600 F.3d at 893. In the instant case, Local 525 Business Agent Tim Ryan made a rational decision to not arbitrate Rippley's grievance. Rippley has proffered, and the record contains, no evidence that Ryan's decision (or any of the challenged actions by Local 525) stemmed from an improper motive or were irrational or discriminatory. To the extent Rippley has presented a claim for breach of Local 525's duty of fair representation, there are no genuine issues of material fact, and Local 525 is entitled to judgment as a matter of law on that claim.

### E. Conclusion

For all the foregoing reasons, the Court **GRANTS** Defendant Local 525's motion for summary judgment (Doc. 41) in its entirety. One loose end prevents entry of

judgment at this time. When that has been resolved by the undersigned Judge (via separate Order), the Clerk of Court **SHALL ENTER JUDGMENT in favor of Defendants** and against Plaintiff on all of Plaintiff's claims herein.

The loose end is this – Local 525's answer contains a counterclaim against Rippley for abuse of process (Doc. 13, pp. 4-6). The undersigned Judge **DIRECTS Local 525's counsel – on or before March 19, 2012** – to file a Notice advising whether Local 525 intends to dismiss the counterclaim without prejudice, now that summary judgment has been granted on all of Plaintiff's claims herein. The Court notes that the discovery and dispositive motion deadlines have elapsed, and the undersigned Judge does not intend to extend them at this late date.

IT IS SO ORDERED.

DATED March 6, 2012.

s/ *Michael J. Reagan*
Michael J. Reagan
United States District Judge